UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.    ) | No. 05-cr-133 |
| ) | |
| RICHARD MOSES, ) | |
| Defendant. ) | |

**DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE**

Now comes Richard Moses, by counsel and submits this renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  In addition to the factors described in Mr. Moses' prior motion and filings (docs. 439, 446, and 447), Mr. Moses submits this motion to address or expand upon factors not fully identified or explained in his prior motion, to provide additional information regarding his extraordinary rehabilitation, to address the continued harsh conditions of confinement, and to explain why the 18 U.S.C. § 3553(a) factors favor a reduction in sentence.  In particular, this motion addresses the likelihood of a lower sentence today and adds additional information about Mr. Moses' work as an inmate caregiver (essentially a front-line healthcare worker during the pandemic).  BOP staff describe him "as trustworthy, compassionate, hardworking, patient and a reliable."  Fellow inmates describe his work as heroic and "impressive and extraordinary."  These inmates also relate instances

[1]

where Mr. Moses saved lives.  Mr. Moses' prior supplemental filing in support of his motion for compassionate release (doc. 446) is attached as Exhibit A.[1]

## I. Extraordinary and compelling circumstances exist in this case based on Mr. Moses' age, the pandemic and accompanying conditions of confinement, the amount of time served, Mr. Moses' extraordinary rehabilitation, and the likelihood of a lower sentence today.
### A. The harsh conditions of confinement.

In Mr. Moses' prior compassionate release motion, he explained that extraordinary and compelling circumstances existed based on the COVID-19 pandemic, his susceptibility to complication from a COVID-19 infection, the conditions of confinement, the length of his confinement, and his extraordinary rehabilitation.  Mr. Moses reiterates those reasons and further elaborates on the reasons that make the case extraordinary and compelling.  *United States v. Ramirez*, 2021 WL 5233512 at *6 (S.D.N.Y. Nov. 10, 2021) ("Where 'no single factor alone' may justify release, the total circumstances may still rise to the level of extraordinary and compelling reasons for release.").  Mr. Moses first addresses the length of time served.

Mr. Moses has been in custody since March 30, 2006, some 192 months (or 225 months with good time).  He has now served 75% of his sentence, with the last 2 years of his sentence being under conditions far harsher than the Court could have anticipated at sentencing.  As Mr. Moses explains below, numerous courts have considered the harsh conditions of confinement when deciding whether

---

[1] Exhaustion is not an issue in this case as Mr. Moses made a request to the warden that was denied on June 11, 2021.  Exhibit B.

[2]

extraordinary and compelling circumstances exist.  Two other points about the amount of time served bear emphasis.  First, Mr. Moses is now years beyond the 15-year (minimum) plea offered early in his case.  Doc. 238 at 2-3.  Second, Mr. Moses is within almost a year of having served the minimum sentence specified in the Rule 11(c)(1)(C) agreement that was finally signed.

Numerous courts have considered the harsh conditions of confinement when granting motions for compassionate relief.  *United States v. Hatcher*, 2021 WL 1535310 at *3 (S.D.N.Y. Apr. 19, 2021) (granting motion for compassionate relief for vaccinated inmate and noting that at the time of sentencing "the Court did not envision Ms. Hatcher to serve this term of imprisonment in near-total lockdown, without the mental health and other support programs that the Court believes to be critical to her health and ability to reenter society."); *United States v. Romero*, 2021 WL 1518622 at *4 (S.D.N.Y. Apr. 16, 2021) ("The pandemic has subjected Romero to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what the Court expected at sentencing."); *United States v. Quinones*, 2021 WL 797835 at *2 (S.D.N.Y. Feb. 27, 2021) ("the Court finds, as it did with *Rodriguez*, that the pandemic, because of the concomitant lockdowns and restrictions that are necessary to ensure inmate safety, has rendered Quinones's incarceration 'far harsher and more punitive than the Court had anticipated at sentencing.'"); *United States v. Mcrae*, No. 17 CR. 643, 2021 WL 142277 at *5 S.D.N.Y. Jan. 15, 2021 (granting compassionate release to a prisoner housed at FCI Allenwood Low, and observing that "a day spent in prison under

extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison"); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."). In short, the pandemic has made Mr. Moses' prison experience significantly harder than anticipated.

### B. Conditions in the BOP.

Mr. Moses has been under the BOP's COVID restrictions for two years. He was present for both the initial winter 2020-2021 surge, the Delta variant surge, and the Omicron surge.[2] At least 55,000 BOP inmates contracted COVID-19 and at least 292 died. As of April 4, 2022, the BOP reports that 1 staff member is presently testing positive for COVID-19 at FMC Devens. The facility reports that 13 inmates at the facility have died.

At the same time, the BOP's data is inaccurate and underreports the presence of the virus given the significant decrease in testing in recent months and the BOP's flawed record-keeping practices.[3] Those record-keeping practices were

---

[2] The BA.2 Omicron variant, which is 80% more transmissible than the prior Omicron variant, is now causing cases to rise in parts of the world. Official expect to see cases rise in the United States as well. Spencer Kimball, Omicron BA.2 subvariant will soon dominate in U.S., but Fauci doesn't expect another surge, CNBC (March 23, 2022) (available at https://www.cnbc.com/2022/03/23/covid-omicron-bapoint2-subvariant-will-soon-dominate-in-us-but-fauci-doesnt-expect-another-surge.html).

[3] *See* Testimony of Alison K. Guernsey, The First Step Act, The Pandemic, and Compassionate Release: What Are the Next Steps for the Federal Bureau of Prisons?, U.S. House of Representatives Committee on the Judiciary, Subcommittee on Crime, Terrorism, and Homeland Security (Jan. 21, 2022) (available at https://docs.house.gov/meetings/JU/JU08/20220121/114349/HHRG-117-JU08-Wstate-GuernseyA-20220121.pdf).

the subject of recent Congressional testimony by Professor Alison Guernsey. Professor Guernsey notes that BOP death statistics are not reported immediately, do not include people who have died in privately managed prisons, and do not include inmates who caught COVID-19 and were released. Professor Guernsey notes that the BOP itself agrees that its reported infection rates (and case totals) are inaccurate because "the cumulative COVID-19 infection data the BOP reports does not include anyone who caught COVID-19 in prison but who was then released." *Id.* at 7. The UCLA Law COVID Behind Bars Data Project rates the BOP's data reporting as an "F."

## II. Additional evidence of Mr. Moses' extraordinary rehabilitation.

As explained in his initial motion, Mr. Moses works as an inmate caregiver at FMC Devens. He has also obtained his certified nursing assistant (CNA) certification. Mr. Moses' work on behalf of elderly, sick, and disabled is described by inmates and staff in exceptional terms. Staff report he cares for inmates "with patience and grace," while inmates describe him as heroic, compassionate, and loving. One inmate reports that Mr. Moses saved his life and another describes Mr. Moses being exposed to (and contracting COVID-19) while helping an inmate who collapsed in the shower. These reports—as well as the letters previously submitted—show the vastly more mature, conscientious, and caring individual that Mr. Moses has become. The letters also document his work as a frontline healthcare worker during the pandemic. Together with the other factors identified, this work warrants a finding that extraordinary and compelling circumstances exist and that a reduction in his sentence is warranted.

### A. Although a court cannot base its determination solely on post-offense rehabilitation, Mr. Moses' actions go beyond rehabilitation and have already made him a positive, contributing member of society.

The only limit on what a court can consider to be extraordinary and compelling is § 3582(c)(1)(A)'s requirement that the finding not be based solely on rehabilitation. *United States v. Brooker*, 976 F.3d 228, 237-238 (2d Cir. 2020). Still, as was made clear in his prior motion and is further illustrated below, Mr. Moses' record in the BOP is one that goes beyond rehabilitation and is instead one that demonstrates that he is already a positive, contributing member of society. At least one court in this Circuit has noted that actions that go beyond "a change in a defendant's circumstances that leads to a return to society with no further criminal activity" are a separate factor to be considered when determining whether extraordinary and compelling circumstances exist. *United States v. Torres*, 464 F. Supp. 3d 651, 663-664 (S.D.N.Y. 2020). Indeed, the court in *Torres* noted that "[m]any defendants who pass through this Court ultimately become fully functioning members of society—they achieve, so to speak, rehabilitation." *Id.* at 664. Separate and apart from the usual rehabilitation are efforts to assist fellow inmates and the community as a whole, this type of service "exceed the bounds of what we consider 'rehabilitation.'" *Id.* at 663. The *Torres* Court explained:

> Here, by comparison, the Torres brothers have established a decades-long record of meaningful community service, a record that would be notable even outside the federal prison system. As Judge Walker aptly stated: "Jorge and Victor's sustained and successful efforts to improve themselves, their families, and their community are commendable, and, in my experience, unique." (Walker Letters at 4.) The Court

>   concludes that the Torres brothers' contributions are, as the statute requires, "extraordinary and compelling."

*Id.* at 664.  Importantly, *Torres* involved inmates serving life sentences based on their "a large-scale, street-level heroin distribution network operating mainly out of the South Bronx." *Id.* at 652.  Nor is the decision in *Torres* the only example of courts finding that an inmate going beyond basic rehabilitation can be a factor in determining whether extraordinary and compelling circumstances exist.[4] The type of service the *Torres* Court dealt with is decidedly similar to that found in Mr. Moses' case and his work as a caregiver.  This service, in combination with the other factors identified warrants granting Mr. Moses' motion for compassionate release.

---

[4] *Rodriguez*, 492 F.Supp. 3d at 313 (S.D.N.Y. 2020) (finding extraordinary and compelling circumstances for inmate serving life sentence and noting "[t]he Court finds that this overwhelming evidence of, not just rehabilitation, but transformation, weighs in favor of a finding that extraordinary and compelling reasons exist to modify Rodriguez's sentence.  That Rodriguez has developed such an outstanding record in prison "without any tangible incentive other than self-improvement, given that his life sentence meant that he could neither earn any 'good time' credit nor receive any other sentence reduction benefit" weighs all the more strongly still."); *cf. United States v. Millan*, 2020 WL 1674058 at *8 (S.D.N.Y. Apr. 6, 2020) (finding extraordinary and compelling circumstance for inmate serving life sentence and observing "[i]n the almost three decades that have passed since he was arrested (and detained) in 1991, and despite having had no realistic hope of release, Mr. Millan has done everything in his power to rehabilitate himself, as demonstrated by his genuinely exceptional accomplishments and meritorious prison record.  He is remorseful and contrite and has fully accepted responsibility for his crimes.  In the almost three decades that he has been incarcerated, Mr. Millan has conducted himself as a model prisoner and demonstrated exceptional character.  He has developed into a man of great faith and a leader of the religious community at FCI Fairton and has demonstrated a commitment to working worth at-risk youth and suicide-prevention.").

### B. Additional evidence of Mr. Moses' rehabilitation.

Numerous letters supported Mr. Moses' initial motion and described his work as an inmate companion for sick, disabled, and elderly inmates at FMC Devens. Mr. Moses attaches several additional letters that further document his work and extraordinary rehabilitation. For example, Mr. Moses' case manager notes the "patience and grace" with which he works.

> Mr. Moses has had a particularly positive effect to the daily operations of Devens Federal Prisons' In-patient skilled nursing unit, where he works as an inmate companion. In this capacity, he is viewed by both his peers and staff as trustworthy, compassionate, hardworking, patient and a reliable asset to the infirm inmates on this unit and his efforts should not go unnoticed. Since before the start of the pandemic, we have relied on Mr. Moses to intimately assist with the direct care and activities of daily living with the inpatient inmates, most of whom can exhibit demanding behavior, use vulgar terms and become combative. These inmate patients have illnesses that range from Dementia and immobility to post-op with discretionary precautions.
> Mr. Moses endures these situations with patience and grace. Through his actions he displays, it is apparent that Mr. Moses is highly motivated by his compassion for the elderly. I believe many other staff on the PA Unit would concur that Mr. Moses offers the same level of respect, compassion, and tolerance to all of the inmates that transition their way through this inpatient unit. It my hope that Mr. Moses continues with the same level of competence in his employment upon his release and continues to carry himself with the same commitment to his family and community as he has to the elderly patients at FMC Devens.

Exhibit C.

Mr. Moses attached a letter from Susan Russo to his initial motion (see Doc. 446-9) and attaches another letter from Ms. Russo (as Exhibit D) that further

documents the help Mr. Moses provided to her husband, Frank Russo, while incarcerated.

Also attached are several letters from fellow inmates who describe Mr. Moses' work on behalf of inmate patients in terms that are unique. *See* Exhibit E. First is a letter from Cedric Wright. Mr. Wright recounts the help Mr. Moses provided when he (Cedric Wright) had COVID. In short, Mr. Wright states that Mr. Moses saved his life:

> I'm writing you this letter to let you know about the good deeds that Mr. Moses does in hopes that you would at least take my words into consideration in regards to letting him go home to his family.
> On the date of 1/29/21 I fell sick with COVID-19. I was living in a four man room with Mr. Mosses at that time. I was unable to breathe and was about to stop fighting when Mr. Mosses went into action and got the officer and a nurse who at that time happen to have a set of oxygen. Mr. Mosses saved my life. I made it to the outside hospital successfully and now I am almost fully recovered. Besides just being my companion Mr. Mosses takes care of 85% of the people on our unit that needs assistance. He puts himself in harms way to make sure that others are ok. I don't want to take up too much of your time Your Honor, I just want you to know that Mr. Mosses is not the same man that you sentenced he is a changed man a good man who is needed out in society more than in here especially in these challenging times.[5]

Another inmate (Harold Joachim von der Goltz) describes in detail the care that Mr. Moses provided to a sick inmate, Frederick Douglas Kyle. Mr. von der Goltz describes Mr. Moses' care as "impressive and extraordinary."

---

[5] Mr. Wright's 264-month sentence was reduced under § 404 of the First Step Act and he was released on February 2, 2022. *United States v. Cedric Wright*, no. 09-cr-031 doc. 220 (ED Va 11/20/2019).

> Mr. Moses who is an Orderly impressed me with his laborious work ethic, willingness to help in particular taking care of Frederick Douglas Kyle in addition to the amazing Hospital staff.
> Mr. Kyle shared my room with one other gentleman for 10 days. While he was easily able to move about upon arrival, he had several falls which led to a significant impairment ending up in a wheelchair, soiling his pants and becoming despondent, so that today he was taken to another hospital.
> Mr. Moses took Mr. Kyle into the shower, cleaned him up and had nothing but kind words for him being wonderful with that poor man before being transferred.
> His willingness to make the sacrifice, do all the work, talk and encourage Mr. Kyle were impressive and extraordinary. It made Mr. Kyle feel loved, cared after and comfortable, something I have rarely seen.

Unfortunately, Mr. Kyle died in BOP custody on June 30, 2021. Another inmate, Ravindranaut Roopnarine, also describes Mr. Moses' heroic efforts to help another elderly inmate (Thomas Syfor) during the pandemic. Mr. Roopnarine states that Mr. Moses helped to save the life of Mr. Syfor and "others on the unit as well" during the pandemic.

> My name is RAVI ROOPNARINE patient here at FMC DEVENS and i met Mr. RICHARD MOSES two years ago. I immediately realized that i was fortunate to come here as a patient and have him as a real care giver. His concern for all inmates including my self received a very high level, he really does care for our safety which is unparallel and unique. . . . He is by far the most caring, compassionate and honorable person I ever met in my life. He would risk his own life for the safety of others.
> I am on the same unit as him and have witnessed, what I consider acts of heroism as a frontline worker during this pandemic. Just one of many examples I can give you in January 2021, while being confined in our rooms for several weeks meaning Quarantine, my room-mate whose name is Mr. Thomas Syfor, eighty years, old collapsed in the washroom, he was suffocating from the shortage of oxygen which he

[10]

was not getting because his oxygen tube came out of his nose when he fell flat on the floor. I Ravi Roopnarine decided on my own to put the OXYGEN TUBE back in his nose then went to seek for additional help. I call upon Mr. RICHARD MOSES like always for him to come to my room and help Mr. Thomas Syfor then I went again and seek for help from the unit Officer to call for Medical Emergency, Mr. Steve Bartlett (NURSE MANAGER) like always appeared within minutes with his nurses and tend to Mr. Syfor. Mr. Richard Moses' job demanded that he take care of patients on the entire unit cause he is the lead CNA, now he risked his life again by assisting Mr. Steve Bartlett and my-self to bodily lift a 250 -300 lbs handicap patient Mr. Syfor and lay him in his bed after he was breathing again properly. Mr. Moses then assisted the patient to the restroom.

   Mr. Moses is a HERO in the eyes of the entire P-2 unit of Devens Medical Hospital as he not only saved the life of this Dying eighty year old man, but others in the unit as well. Later that same day Mr. Thomas Syor was diagnose with the COVID 19 virus. Immediately after, each of us that interacted with Syfor all tested positive too. This cause the entire P-2 unit to be lock down for QUARANTINE and all inmate/patient with serious underline medical condition were saved from the vicious CORONA VIRUS. Mr. Richard Moses did an excellent job before and after he recovered from the virus up until today.

   I Ravi Roopnarine fully believe that if released he will make a great contribution to society as he has here at FMC Devens. His skills are being wasted here. He is a wonderful human being and deserves another chance at life. I know that if released, he would never jeopardize being reunited with his family, particularly his grand-children which he loves and speak of all the time. He can't wait to live with his mother and help her as he has a lot to make up for with her too.

   Thanks you Judge, for your time and I sincerely hope you will give Mr. Richard Moses some time off his sentence as there is no one more deserving.

The work that Mr. Roopnarine describes is that of a frontline medical worked. Mr. Moses has carried out that work with diligence and compassion and at great

personal risk.  Lastly, another of Mr. Moses' patients, James Jay Seltzer, reports that:

> When I first came to fort Devens, I was 69 years of age.  It was the first time in my life that I was ever incarcerated.  It was a terrifying experience.  Richard Moses protected me and I was unable to walk and confined to a wheel chair and various inmates attempted to extort me and threatened violence.
>
> Mr. Moses has been very candid with me about the reasons why he was sent to prison.  Over the last three and a half years, I have gotten to know Richard.  He is unfailingly kind and compassionate in his interactions with me as well as other inmates.  Richard has a strong family support system and I believe that if he is allowed to return to his family he will lead a law abiding life.

Also attached is a letter from Mr. Moses' mother, who indicates that given her age and health, having Mr. Moses' assistance would be very helpful.  The letter is attached as Exhibit F.

Finally, Mr. Moses' own letter to the Court (Exhibit G) is clear evidence of someone who has matured and grown as a human being in the last 16 years in custody.  Mr. Moses' letter makes it clear that his work with disabled inmates has helped him learn compassion and patience.  That Mr. Moses finds the work challenging and humbling is further testament to his growth.

### III. Courts continue to grant compassionate release motions for individuals convicted of the most serious crimes.

Mr. Moses' case was an undeniably serious one.  Still, it bears emphasizing that that courts in the Second Circuit and elsewhere continue to grant compassionate release motions where the defendant has been sentenced for the most-serious federal crimes.  For example, cases involving especially serious

offenses included cases in which the defendant was sentenced to life imprisonment for murder.  For example, *United States v. Quinones*, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021), involved Alan Quinones, who was the head of an organization "in the Bronx and elsewhere" that was "focused on the distribution of cocaine and heroin." *Id*. at *1.  Once he was arrested, Quinones and an associate retaliated against a confidential informant by having him killed.  The informant's death was preceded by brutal torture.  *Id.*  At trial, Quinones and his associate faced the death penalty, but ultimately received a sentence of life imprisonment.  *Id*.

Prior to the decision in *Quinones*, the district court granted Diego Rodriguez' compassionate release motion.  *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020).  Diego Rodrigues was Quinones' "chief lieutenant."  *Quinones*, 2021 WL 797835 at *1.  Like the defendant in *Rodriguez*, the *Quinones* Court concluded that extraordinary and compelling reasons existed in part because of the defendant's "overwhelming evidence of . . . total rehabilitation." *Id* at *2.  The court reduced Quinones' sentence from life to 35 years imprisonment.  *Id*. at *1.

Similarly, the defendant in *United States v. Underwood*, 2021 U.S. Dist. LEXIS 8378 at *2 (Jan. 15, 2021, SDNY), was the head of a violent drug-distribution organization based in West Harlem.  "The group was responsible for at least five murders, and one attempted murder, committed at Underwood's direction. These murders were brutal and calculated, aimed specifically at 'eliminating and intimidating competitors, informants, and actual or potential witnesses.'"  *Id.* (record citations omitted).  Like the defendants cited above, the defendant in

[13]

Underwood had been sentenced to life imprisonment. *Id.* at *3. Following his incarceration, however, the court concluded that the defendant had "'transformed himself into a model prisoner, father, and American citizen.'" *Id.* at *8. In sum, the court concluded that the defendant had "present[ed] strong evidence that he has been fully rehabilitated." *Id.* at *9. Like the defendant in *United States v. Torres*, 464 F. Supp. 3d 651 (SDNY 2020), the court concluded that the evidence demonstrated that the defendant had "exceed[ed] the bounds of what we consider 'rehabilitation.'" 2021 U.S. Dist. LEXIS 8378 at *9.

Other courts have reached similar results. *United States v. Douglas*, 2021 WL 214563 at *1 (D.D.C. Jan. 21, 2021), involved a defendant who had "served almost fifty months of a 120-month sentence for second-degree murder in connection with the 1990 killing of Anthony Morrisey, imposed in 2012 to run consecutive to a state sentence he was then serving in New York for a different homicide offense." Like the cases cited above, the *Douglas* Court found that the record before it contained overwhelming evidence "of his truly superb rehabilitation and demonstrates that he does not currently pose a danger to the community. Any concerns over Douglas's potential future dangerousness can be allayed by the imposition of an extended period of supervised release." *Id.* at *10; *see also Ramirez*, 2021 WL 5233512 at *6 (granting in part motion for compassionate release for individual who was leader of organization that sold "over 30 kilograms of heroin" and "participated in two separate murders," *id.* at *9); *United States v. Minicone*, 521 F. Supp. 3d 163, 167 (N.D.N.Y. 2021) (granting motion for 72 year old defendant with a "history of skin

[14]

cancer, high blood pressure, and his possible kidney disease" and explaining that "Minicone's conviction was 'based on evidence at trial that [he] and [his] co-defendants were involved in a wide-spread criminal enterprise, centered in Utica, NY, that spanned the period between the years 1973 and 1989 and including extortion, loansharking, illegal gambling, trafficking in stolen property and murder.'").

### IV. Mr. Moses' sentence would likely be lower today and he would not be subject to the enhancements that drove his sentence.

In his initial motion, Mr. Moses did not address the fact that his Guidelines range would be drastically lower today as a result of changes to the Guidelines and to the recidivist sentencing enhancements. First and foremost, Mr. Moses would no longer be subject to any 18 U.S.C. § 851 enhancement. In his underlying case, the government filed two § 851 enhancements based on his only prior drug conviction, a New Hampshire state conviction with two counts (PSR ¶118). When it enacted the First Step Act, Congress raised the bar for application of the § 851 enhancement. It limited application of that enhancement to cases where, among other things, the prior state conviction was for an offense punishable by more than ten years incarceration. It also required that the individual have actually served more than a year in custody. In this case, Mr. Moses' prior New Hampshire convictions were suspended sentences (and consequently received only 1 criminal history point under § 4A1.1(c)). As a result, the mandatory minimum would drop from 20 years to 10 years under § 841(a)(1)(A).

Two other changes would combine to produce a lower sentence. First, the Guidelines range would be lower today. When he was sentenced in 2010, Mr. Moses' base offense level for the drug offense was 32; today it would be 30. Second, for obvious reasons, Mr. Moses did not receive an offense level reduction for acceptance of responsibility in 2010. Twelve years later, however, Mr. Moses' excellent record and extraordinary rehabilitation make it clear that acceptance of responsibility would be appropriate today. Together, these changes would reduce his Guidelines range from 360-life (OL 41, CHIII) to 235-293 months (OL 36, CHIII).

One other point bears emphasizing. As he approached trial and the negotiations that took place before and during trial, Mr. Moses' apparently never had the benefit of knowing that his Guidelines range was as punitive as it would turn out to be. Thus, Lamar Enzor, counsel at trial, explained that he had not done a sentencing Guidelines analysis prior to trial. Doc. 261 at 18. Nor, incredibly, did he think it was necessary.

## V. The 18 U.S.C. § 3553(a) factors favor a reduction in sentence.

The Court's March 10, 2021 Order denying Mr. Moses' motion for compassionate release concluded that "[t]he sentencing factors of deterrence, punishment, and incapacitation for a defendant willing to pay money to have a witness killed remain present today and have not changed since the sentencing hearing in 2010." Doc. 449 at 7. Mr. Moses respectfully disagrees for at least two reasons. First, the conclusion applies the wrong legal standard. The § 3553(a) factors are not static as this case demonstrates: Mr. Moses has been in custody

since March 30, 2006, some 192 months, and the relevant § 3553(a) factors balance in a remarkably different way based on the intervening 16 years, Mr. Moses' growth as a human being, and his work as a frontline healthcare worker during the pandemic. Thus, while "[t]he sentencing factors of deterrence, punishment, and incapacitation" amply justified the sentence imposed, the relevant question now is whether the § 3553(a) factors, as a whole, warrant a reduction in Mr. Moses' sentence. That is, whether a sentence of time served, 240 months, or some other reduction would be "sentence sufficient, but not greater than necessary, to comply with" the § 3553(a) factors.

Second, Mr. Moses' record in the BOP and in particular his extraordinary rehabilitation belies any conclusion that the deterrence, punishment, and incapacitation factors warrant significant further incarceration. Instead, the Court should conclude that the 18 U.S.C. § 3553(a) factors weigh in favor of granting compassionate release and a reduced sentence. Mr. Moses has now served 192 months or 75% of the sentence that this Court determined was appropriate based on the nature and circumstances of the offense and Mr. Moses' history and characteristics. The 192 months (or 225 months with good time) have achieved all of the deterrence that an incarceratory sentence can provide. Mr. Moses' record while incarcerated, including especially his work as a caregiver, makes it clear that he has been rehabilitated and that further incarceration is simply not necessary.

The amount of time served—192 months (or 225 months with good time)—also reflects the seriousness of the offense, promotes respect for the law, and provides

just punishment.  A 225-month sentence is a serious sentence by any measure and fully reflects the seriousness of the offense.  This is especially true in light of the COVID-19 pandemic and the harsh conditions of confinement that inmates have experienced for the last 2 years.  At this point, it is a sentence reduction that would most promote respect for the law in light of Mr. Moses' record of extraordinary rehabilitation and the harsh conditions of confinement.

Public safety, or incapacitation, is not an issue in this case.  The record developed here and in his first motion make it clear that Mr. Moses is fully rehabilitated and on a sustained, pro-social track.  His progress as an inmate and as a person is most evident in his work as a caregiver for elderly, sick, and disabled inmates.  BOP staff, inmates, and inmate families all commend Mr. Moses' diligence, patience, and grace.  Some inmates describe his work as heroic and all are clear that he shows great depths of compassion in his work.  Simply put, this is not the same individual arrested in 2006 and there is no question that Mr. Moses is fully rehabilitated.[6]

The type and length of sentence available is especially important for a number of reasons.  First, should the Court determine that immediate release is not appropriate, this Court has the authority to reduce, but not end, the sentence under § 3582(c)(1)(A).  Second, the record from trial makes it clear that Judge Murtha was highly concerned about the life sentence that might have been imposed.  In this

---

[6] Moreover, Mr. Moses is now 54 years old and is at an age when recidivism decreases markedly. U.S. Sentencing Comm'n, *Recidivism Among Federal Drug Trafficking Offenders*, at 20 (2017) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170221_Recidivism-Drugs.pdf).

vein, it is clear that Mr. Moses might have received a sentence as low as 15 years based on prior negotiations. Doc. 238 at 56. Third, as noted above, it is highly likely that Mr. Moses would receive a lower sentence today because his Guidelines range would be lower and he would not be subject to the 20-year mandatory minimum. Indeed, Mr. Moses is within approximately 10 months of the 235-293 month Guidelines range. Fourth, it is notable that Mr. Moses is within nearly a year of having served the 240-month minimum sentence specified in his Rule 11(c)(1)(C) plea agreement. The fact that the Court accepted this agreement makes it clear that a reduction to 240-months, for example, would satisfy the § 3553(a) factors, including the requirement that the sentence reflect the seriousness of the offense. Fifth, to the extent that the Court has some lingering concerns, it has the authority to order home detention as a special condition of supervised release. Finally, Mr. Moses faces a 10-year period of supervised release. Thus, the Court will have ample opportunity to observe Mr. Moses' return to society and ensure that he is on the right track.

## CONCLUSION

For the reasons stated above, Mr. Moses respectfully requests that the Court grant his motion for compassionate release and impose such a reduction as it deems appropriate.

Burlington, Vermont, April 6, 2022.  MICHAEL L. DESAUTELS

                                                    Federal Public Defender

                                       By: */s/ Barclay T. Johnson*
                                                  Barclay T. Johnson
                                                  Office of the Federal Public Defender
                                                  District of Vermont
                                                  95 Pine Street, Suite 150
                                                  Burlington, Vermont  05401
                                                  (802) 862-6990
                                                  Counsel for Richard Moses